# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **DENNIS WIERTELLA,** | ) CASE NO. 24-3311 |
| | ) |
| Plaintiff-Appellee, | ) On Appeal from the United States |
| | ) District Court for the Northern District |
| vs. | ) of Ohio |
| | ) |
| **LAKE COUNTY, OHIO,** *et al.* | ) Case No. 1:20-CV-2739 |
| | ) |
| Defendants-Appellants. | ) |

---

## BRIEF OF APPELLEE DENNIS WIERTELLA

---

DANIEL P. PETROV (0074151)
dpetrov@tpgfirm.com
SARAH E. WYSS (0100278)
swyss@tpgfirm.com

THORMAN PETROV GROUP CO., LPA
20046 Walker Road
Shaker Heights, OH 44122
Tel. (216) 621-3500
Fax (216) 621-3422

Attorneys for Plaintiff-Appellee

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTEREST ............................................................................................ vi

STATEMENT CONCERNING ORAL ARGUMENT ................................... vii

ASSIGNMENT OF ERROR...........................................................................1

STATEMENT OF THE CASE.........................................................................1

STATEMENT OF THE ISSUE PRESENTED ON APPEAL............................2

STATEMENT OF FACTS...............................................................................4

    A.   **As Part of Wiertella's Medical Screening, He Informed
Appellants of His Use of "Essential Medications" for His Serious
Medical Conditions.** ....................................................................4

    B.   **Appellants Knew that Wiertella Had Been Booked without
"Essential Medications" and that His Medications Needed to Be
Continuously Administered, but They Did Not Take Steps to
Secure Wiertella's Medications.** ..................................................5

    C.   **Appellants Did Not Verify Wiertella's Medications or Arrange
for the Delivery of Wiertella's Medications to the Jail, nor
Schedule a Physician Sick Call.** ..................................................7

    D.   **Wiertella Submitted Several Requests for Medications, but
Appellants Did Nothing to Secure His Non-Diabetes
Medications.** ................................................................................8

    E.   **Appellants Exclusively Treated Wiertella's Diabetes and
Ignored His Other Serious Medical Conditions.** ........................9

    F.   **Wiertella Was Never Scheduled for Any Sick Call with Any
Medical Provider Who Was Licensed to Write Prescriptions.** ...........10

    G.   **Wiertella Dies on December 10, 2018, From Hypertensive
Cardiovascular Disease, due to Appellants' Failure to Obtain
His Medications.** ..........................................................................11

ARGUMENT ...............................................................................................12

    A.   **The District Court Correctly Denied Qualified Immunity to
Snow and Watson.**........................................................................13

1.     An Inmate's Right to Be Free from Deliberate Indifference to Their Serious Medical Needs Was Clearly Established Long Before the *Richmond v. Huq* Decision. ...............................................15

2.     *Richmond v. Huq* Clearly Established that When a Medical Employee at a Jail Becomes Aware that an Inmate Is on Medication for Serious Medical Conditions, that Employee Violates the Inmate's Constitutional Rights by Failing to Ensure that the Inmate's Medication Is Obtained. .....................................17

    a.     Snow and Watson Had a Fair and Clear Warning that They Were Required to Act to Ensure that Wiertella Obtained His Essential Medications. ......................................................19

        (1)     Watson's Conduct is Factually Similar to the Conduct of the Richmond Defendants. .....................................20

        (2)     Snow's Conduct is Factually Similar to the Conduct of the Richmond Defendants. .....................................24

3.     The District Court Correctly Interpreted *Richmond v. Huq* as Providing Notice "that When a Medical Employee at a Jail Becomes Aware that an Inmate Is on Medication for a Serious Medical Condition, a Defendant Violates the Constition if She Fails to Promptly Take Steps to Ensure that the Inmate's Medication Is Obtained." ................................................26

4.     The District Court Properly Found that Snow and Watson Violated Wiertella's Constitutional Rights. ................................27

    a.     Watson Knew of and Disregarded an Excessive Risk to Wiertella's Health and Safety. ..............................................29

    b.     Snow Knew of and Disregarded an Excessive Risk to Wiertella's Health and Safety. ..............................................30

CONCLUSION..................................................................................................**30**

CERTIFICATE OF COMPLIANCE ..................................................................**32**

CERTIFICATE OF SERVICE ............................................................................**33**

ADDENDUM ......................................................................................................**34**

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alspaugh v. McConnell*, 643 F.3d 162 (6th Cir. 2011)............................................23

*Arrington-Bey v. City of Bedford Heights,* 858 F .3d 988 (6th Cir. 2017)..............19

*Bennis v. Gable,* 823 F.2d 723 (3d Cir. 1987)........................................................14

*Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991)................................................15

*Burwell v. City of Lansing*, 7 F.4th 456 (6th Cir. 2021) .........................................14

*Carter v. Broward Cnty. Sheriff Off.,* 710 F. App'x 387 (11th Cir. 2017) ..............17

*Dadd v. Anoka Cnty.*, 827 F.3d 749 (8th Cir. 2016)................................................17

*Duncan v. Corr. Med. Servs.*, 451 F. App'x 901 (11th Cir. 2012)..........................16

*Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005) ..........................14

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................................15

*Everson v. Leis*, 556 F. 3d 484 (6th Cir. 2009)......................................................14

*Farmer v. Brennan*, 511 U.S. 825 (1994)....................................................... 27, 28

*Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972).................................................15

*Greene v. Crawford Cty.*, 22 F.4th 593 (6th Cir. 2022) .........................................14

*Griffith v. Franklin Cnty, Kentucky,* 975 F.3d 554 (6th Cir. 2020)........................13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..........................................................14

*Heflin v. Stewart Cty.*, 958 F.2d 709 (6th Cir. 1992)..............................................14

*Jones v. Cty. of Kent*, 601 F. Supp. 3d 221 (W.D. Mich. 2022).............................19

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .....................................................28

*Mitchelle v. Forsyth*, 472 U.S. 511 (1985) ............................................................13

*Mize v. Sator*, No. 3:11-cv-685, 2016 U.S. Dist. LEXIS 163554 (M.D. Tenn. Nov. 28, 2016)...............................................................................................................16

*Mullenix v. Luna*, 577 U.S. 7 (2015) ....................................................................19

*Murray v. Ohio*, 29 F.4th 779 (6th Cir. 2022) .......................................................18

*Parsons v. Caruso,* 491 F. App'x 597 (6th Cir. 2012)............................................16

*Pearson v. Callahan*, 555 U.S. 223 (2009)............................................................14

*Ralston v. McGovern*, 167 F.3d 1160 (7th Cir. 1999) ...........................................16

*Rhinehart v. Edelman*, No. 11-11254, 2016 U.S. Dist. LEXIS 173049 (E.D. Mich. Apr. 7, 2016)........................................................................................................16

*Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018) ........................................... passim

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................14

*Strader v. Cumberland Cty.,* No. 2:19-cv-00045, 2020 U.S. Dist. LEXIS 9731 (M.D. Tenn. Jan. 21, 2020)...................................................................................18

*Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2020 U.S. Dist. LEXIS 30613 (E.D. Pa. Feb. 21, 2020).................................................................................................18

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002) ......15

*Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 176556 (N.D. Ohio Sep. 28, 2022).......................................................................................................19

*Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) .................................................18

*Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001) ...............................................16

**Rules**

Fed. Civ.R.56 ...............................................................................................................1

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u><br><u>AND FINANCIAL INTEREST</u>

Pursuant to FRAP 26.1 and 6 Cir. R.26.1, Plaintiff-Appellee Dennis Wiertella

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly-owned corporation?

**NO**

2. Is there a publicly-owned corporation, not a party to the appeal, that has a

financial interest in the outcome?

**NO**

*/s/Daniel P. Petrov*
Daniel P. Petrov (0074151)
Attorney for Plaintiff-Appellee                    August 14, 2024

## <u>STATEMENT CONCERNING ORAL ARGUMENT</u>

Plaintiff-Appellee Dennis Wiertella is willing to participate in oral argument pursuant to FRAP 34(a)(1) and 6 Cir.R. 34(a) if the Court would find it helpful. However, Wiertella believes his position has been fully presented in this brief.

## ASSIGNMENT OF ERROR

Plaintiff-Appellee Dennis Wiertella ("Appellee" or "Wiertella") assigns no error to the United States District Court for the Northern District of Ohio (the "District Court") in its decision (R.56) to deny qualified immunity to Defendants-Appellants Diana Snow, RN ("Snow") and Chistina Watson, LPN ("Watson") (collectively, "Appellants"). Furthermore, Wiertella assigns no error to the District Court in denying summary judgment to Snow and Watson. Wiertella's position is that this Court should uphold that decision (R.56) as it relates to Appellants.

## STATEMENT OF THE CASE

This case is brought by Dennis Wiertella, as the Administrator of the Estate of and Father of Randy Wiertella. Randy Wiertella ("Wiertella") died in the Adult Correctional Facility of Lake County, Ohio (the "Jail") in the early morning hours of December 10, 2018. Appellee filed a complaint with the District Court alleging that Appellants deprived him of his constitutional rights, including that to necessary medical care in violation of the U.S. Constitution. His claims include (1) violation of his constitutional rights under the Fourteenth and Eighth Amendments against Defendants Lake County, Ohio (the "County"), Sgt. Benjamin Longbons ("Longbons"), Diane Snow, RN ("Snow"), Christina Watson, LPN ("Watson"), Dr.

Karim Razmjouel ("Raz")[1] and Captain Cynthia Brooks ("Brooks"); (2) violation of 42 U.S.C. Section 1983 Monell claim against the County for its unconstitutional policies, practices, and customs; and (3) Ohio state law tort claims against Longbons.

Defendant Dr. Raz filed a motion for summary judgment on April 4, 2022 (Raz MSJ, RE 48, Page ID #331-1025). The remaining Lake County defendants filed a motion for summary judgment on June 14, 2022 (Ds' MSJ, RE 57, Page ID #1065-1139). Wiertella filed a consolidated brief in opposition to Defendants' motion for summary judgment on July 14, 2022 (BIO, RE 71, Page ID #4925-5885). On March 26, 2024, the District Court undertook a detailed analysis of the record and properly denied summary judgment on Count One, Wiertella's 1983 claim, as it related to Snow and Watson (Opinion and Order, RE 77, Page ID #5959-6006).  This case is before this Court pursuant to Appellants' appeal of this final judgment, specifically the District Court's denial of summary judgment and qualified immunity to Snow and Watson.

## STATEMENT OF THE ISSUE PRESENTED ON APPEAL

**Issue No. 1:** Taking all of the facts stated as true, and construing all inferences in favor of Appellee, was the District Court correct in ruling that Snow and Watson

---

[1] Defendant Dr. Karim Razmjouei was named as such in the pleadings in this case. During the Dr.'s deposition, he testified that he had legally changed his name to Dr. Raz some time ago. This brief will refer to him as Dr. Raz, consistent with his current name use.

are not entitled to qualified immunity because Snow and Watson's failure to take steps to obtain Wiertella's medications violated Wiertella's clearly established constitutional rights as delineated in *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018)?

   A. Whether the District Court was correct that *Richmond* provided Snow and Watson a fair and clear warning that their conduct was constitutionally deficient, when, like Wiertella, Richmond went for several days without her prescribed medications due to medical staff's failure to take steps to obtain her medications, despite the medical staff's knowledge of her serious medical condition.

   B. Whether this appeal states a valid ground for appeal when the Appellants argue that the District Court incorrectly construed *Richmond* as clearly establishing that "when a medical employee at a jail becomes aware that an inmate is on medication for a serious medical condition, a defendant violates the constitution if she fails to promptly take steps to ensure that the inmate's medication is obtained," when *Richmond* followed this Circuit's precedent that neglecting a prisoner's medical needs and interrupting a prescribed plan of treatment constitutes a constitutional violation.

**Issue No. 2**: Whether Appellants can in good faith present to this Court an argument that Snow and Watson did not appreciate a substantial risk of serious harm

3

to Wiertella and responded unreasonably in violation of his constitutional rights when Snow and Watson were subjectively aware that Wiertella was booked without "essential" medications that needed to be continuously administered and failed to take any steps to ensure that Wiertella's medications were obtained.

## STATEMENT OF FACTS

On December 2, 2018, Wiertella, a resident of Wisconsin, was arrested in Willoughby Hills, Ohio. He was charged in Willoughby Municipal Court of two counts: (1) possession of drugs; and (2) improper transport of a firearm. (BIO, RE 71-3, Page ID 5595-5596). Wiertella was sentenced to 30 days in the Lake County Jail ("Jail").

### A. As Part of Wiertella's Medical Screening, He Informed Appellants of His Use of "Essential Medications" for His Serious Medical Conditions.

Wiertella underwent a medical screening as part of his booking on December 2, 2018, during which he informed Appellants of his use of medications for high blood pressure, heart disease, diabetes, psychiatric disorders, and that he suffered from sleep apnea and immune system problems. (Longbons, RE 60, Page ID 2111-2114). On December 2, 2018, Correctios Officer Longbons completed Wiertella's intake and medical screening. (Longbons, RE 60, Page ID 2049-2050, 2080, 2115). The screening form includes information about medications the inmate takes so that the Jail nurses and physician can make medication decisions. (Longbons, RE 60, Page ID 2097, 2115). It also includes specific inquiries about certain categories of

medications, such as heart disease, because the Jail considers those to be essential medications under its policies and procedures. (Id.)

Wiertella informed Longbons that he suffered from heart disease, diabetes, high blood pressure, a psychiatric disorder, sleep apnea, and immune system problems, all of which the medical screening form confirms. (Watson, RE 59, Page ID 1260-1261; Longbons, RE 60, Page ID 2111-2114; BIO, RE 71-4, Page ID 5562-5663). Longbons admitted that Wiertella's conditions were serious medical conditions. (Longbons, RE 60, Page ID 2111-2112, 2114, 2154). Longbons testified that Wiertella's medications constitute "essential medications" under the Jail's policies and procedures. (Longbons, RE 60, Page ID 2115). Wiertella's form stated (and Longbons understood) that Wiertella was on medications that needed to be continuously administered. (BIO, RE 71-4, Page ID 5662; Longbons, RE 60, Page ID 2108-2109). The form instructed Longbons to record the names of Wiertella's medications, when Wiertella last took them, and when his next dose was needed. (BIO, RE 71-4, Page ID 5662). Despite acknowledging the importance of accurate and complete medical screening forms, Longbons left those sections blank. (BIO, RE 71-4, Page ID 5662; Longbons, RE 60, Page ID 2089, 2109-2110). Longbons transmitted the medical screening form to Jail medical staff. (Longbons, RE 60, Page ID 2117-2118).

**B. Appellants Knew that Wiertella Had Been Booked without "Essential Medications" and that His Medications Needed to Be Continuously**

**Administered, but They Did Not Take Steps to Secure Wiertella's Medications.**

Watson reviewed and signed Wiertella's medical screening form on December 2, 2018, the day that Wiertella was booked. (Watson, RE 59, Page ID 1260, 1264; BIO, RE 71-4, Page ID 5662-5663). Watson also was aware that Wiertella was booked without medications, and she was aware that Wiertella was "on medications that needed to be continuously administered" for diabetes, heart disease, high blood pressure, and psychiatric disorders. (Watson, RE 59, Page ID 1261, 1269). Furthermore, Watson admits that as of that date, she knew that Wiertella took medications, which were considered essential under the Jail's policies. (Watson, RE 59, Page ID 1263-1264).

After signature of the medical screening form, the Jail procedure required nurses to deliver the screening forms to Snow for review. (Watson, RE 59, Page ID 1207). Appellants offer no evidence that Wiertella's file was an exception to this procedure and was not reviewed. Furthermore, Longbons testified that as the Medical Coordinator for the Jail, Snow was "responsible [for] [making] sure that *all* of the inmate medical screens [were] reviewed" under Jail procedure. (Longbons, RE 60, Page ID 2100, emphasis added). The District Court properly determined that a jury could reasonably conclude that Wiertella's medical screening form was treated consistently with Jail procedure. Thus, Snow was aware that Wiertella was

6

booked without "essential medications" as early as December 2, 2018. (BIO, RE 71-14, Page ID 5663).

C. **Appellants Did Not Verify Wiertella's Medications or Arrange for the Delivery of Wiertella's Medications to the Jail, nor Schedule a Physician Sick Call.**

Jail Policy 254A outlines the procedure for inmates who are booked without medications. The policy specifically identifies antihypertensive (blood pressure), cardiac, and diabetic medications as essential medications. (Watson, RE 59, Page ID 1250; Manual, RE 70-12, Page ID 4701). The policy, in relevant part, states:

> If the inmate does not have any essential medications with him/her upon arrival, but states to the staff that he/she is on medications, the medical staff will contact the inmate's physician or pharmacy to confirm the essential medications, and make arrangements for its delivery to the facility.

(Manual, RE 70-12, Page ID 4702). Watson confirmed that the Jail considers certain medications to be essential because serious medical harm or death can occur if they are not administered. (Watson, RE 59, Page ID 1252). However, there is no evidence that Watson or Snow attempted to verify Wiertella's medications or contacted Wiertella's physician or pharmacy, nor did they make arrangements for delivery of his medications to the Jail. Watson and Snow testified that it was the medical staff's preference that inmates ask their family or friends to bring their medications to the Jail, but that if an individual could not arrange delivery of their medications, the medical staff would order and issue the prescription itself. (Snow I, RE 63, Page ID 2738; Watson, RE 59, Page ID 1182). Watson testified that it is *obviously* the Jail's

7

responsibility to issue prescriptions if the inmate's family or friends are unable to bring in the medications. (Watson, RE 59, Page ID 1283, emphasis added). She also admitted that Wiertella's needs were easy to address, that she "could have ordered," "would have ordered," and "was able to order" blood pressure medications for inmates who needed them. (Watson, RE 59, Page ID 1186). Furthermore, Snow stated that it takes "no more than 10 minutes max, usually a lot less than that," to obtain prescription information from a pharmacy. (Snow II, RE 64, Page ID 2853). Neither Watson nor Snow arranged for delivery of Wiertella's medications, even though Wiertella, an out-of-state resident, had not arranged for his family or friends to bring his medications to the Jail.

If no record of prescription could be obtained, the Jail's practice was to schedule "a sick call with the physician and he can discuss it with the physician." (Snow I, RE 63, Page ID 2766). However, a sick call with the physician was not scheduled for Wiertella.

### D. Wiertella Submitted Several Requests for Medications, but Appellants Did Nothing to Secure His Non-Diabetes Medications.

On December 3, 2018, Wiertella prepared his first inmate request form, known as a "kite," requesting "diabetic and other meds." (Physician's Orders/Progress Notes, RE 70-14, Page ID 5667). Watson noted it as received and that only metformin had been ordered for diabetes. (Id.). After he received his metformin for diabetes but not his blood pressure or other medications, Wiertella

8

prepared a second kite request the same day. (Id., Page ID 5666). He requested Prilosec, Saralitralen [*sic*], Lasics [*sic*], Efomefiron [*sic*], and Simocoton [*sic*]. (Id.). He did not receive the medications. On December 5, 2018, Wiertella made a third request for blood pressure medications and reminded the medical staff that records of his medications were the Veteran's Administration pharmacy in Wisconsin. (Physician's Orders/Progress Notes, RE 70-14, Page ID 5665). Wiertella also received no response to his third request. (Id.).

When an inmate requests hypertension medications, Watson testified that the practice of the nursing staff was first to obtain medication type, dosage, and frequency, and then to call the pharmacy to verify. (Watson, RE 59, Page ID 1274). Appellants did not follow this practice with Wiertella. No medical staff asked Wiertella about his medication type, dosage, or frequency. Watson never ordered him any medication other than the metformin for diabetes. (Watson, RE 59, Page ID 1275). No one contacted the Veteran's Administration pharmacy to obtain Mr. Wiertella's prescription information. (Snow II, RE 64, Page ID 2832, 2845). Consequently, Wiertella never received any blood pressure medication before his death in custody at the Jail. (Raz, RE 70-5, Page ID 3637, 3638).

### E. **Appellants Exclusively Treated Wiertella's Diabetes and Ignored His Other Serious Medical Conditions.**

Other than ordering metformin on December 3, 2018, Watson did not order any other medications for Wiertella while he was in custody. (Watson, RE 59, Page

ID 1267, 1273). Watson treated Wiertella's diabetes, but she did not treat his other medical conditions, including hypertension, heart disease, sleep apnea, and psychiatric disorder. (Id.). Watson stated she made this choice because it was "what I was trained to do" by Snow. (Id., Page ID 1267-1268). Watson admits there was nothing that prevented her from addressing more than Wiertella's diabetes and ordering more than one prescription at that time. (Id., Page ID 1270).

### F. **Wiertella Was Never Scheduled for Any Sick Call with Any Medical Provider Who Was Licensed to Write Prescriptions.**

The Jail never scheduled Wiertella for examination with any medical provider who was licensed in Ohio to write prescriptions for medication, demonstrating that even the medical visit that was scheduled was insufficient to address his life-threatening medical needs. Wiertella was scheduled for a blood pressure check on December 10, 2018, eight days after he entered custody of the jail. (BIO, RE 71-1, Page ID 4960). The sick call log includes a notation of a complaint of "no meds" from Wiertella, which reflects Wiertella's multiple kite requests for his medicine. (Snow II, RE 64, Page ID 2835; BIO, RE 71-1, Page ID 4960). The form also includes a handwritten star next to Wiertella's name, which indicated that Wiertella was scheduled for a nurse sick call, not a physician call. (Snow II, RE 64, Page ID 2835-2836; BIO, RE 71-1, Page ID 4960). This is an important fact, as neither RNs nor LPNs are permitted to write prescriptions in Ohio. (Watson, RE 59, Page ID 1182; Snow I, RE 63, Page ID 2722, Raz, RE 70-5, Page ID 3566; Longbons, RE

10

60, Page ID 2097). Notably, Wiertella was not scheduled for a medical history or a physical exam. (Snow II, RE 63, Page ID 2702; BIO, RE 71-1, Page ID 4960). Even after receiving a medical screening form and three kites from Wiertella informing medical staff of his need for blood pressure medications, Appellants still refused to place him on the physician sick call list so that he could receive the prescriptions he needed to survive, or schedule him for a history and physical visit to check his physical condition.

**G. Wiertella Dies on December 10, 2018, From Hypertensive Cardiovascular Disease, due to Appellants' Failure to Obtain His Medications.**

Wiertella was found in his cell nonresponsive and pronounced dead at 3:12 a.m. on December 10, 2018. (BIO, RE 71-3, Page ID 5569). While the County Medical Examiner concluded that atherosclerotic and hypertensive cardiovascular disease caused Wiertella's death (Arden, RE 65, Page ID 2891), Dr. Arden, a forensic pathologist, and an experienced medical examiner, noted that his hypertensive disease was much more significant," as Wiertella's "atherosclerotic disease was mostly very mild in his coronary arteries." (Arden, RE 65, Page ID 2883, 2890). Dr. Arden concluded that Wiertella's cause of death was hypertensive cardiovascular disease, and that the exacerbating factors "were that he did not receive any of his medications other than the metformin, so he didn't receive his blood pressure medications and he had abrupt discontinuance of his psych

medication." (Arden, RE 65, Page ID 2896). "I believe the discontinuance and failure to provide medications contributed to his blood pressure spiking and his risk of sudden death." (Arden, RE 65, Page ID 2896).

## ARGUMENT

Appellants' appeal lacks merit. First, the District Court was correct in ruling that Snow and Watson were not entitled to qualified immunity, as *Richmond* clearly established that when a medical employee at a jail becomes aware that an inmate is on medication for a serious medical condition, that employee violates the inmate's constitutional rights if he or she fails to promptly take steps to ensure that the inmate's medication is obtained.  Second, *Richmond* has a nearly identical fact pattern to this case and provided Snow and Watson with a fair and clear warning about what the law requires. Third, the District Court correctly interpreted *Richmond*, which follows this Circuit's long-established precedent that neglecting a prisoner's medical needs and interrupting a prescribed plan of treatment constitutes a constitutional violation. Fourth, the undisputed evidence shows that Snow and Watson were both subjectively aware that Wiertella was booked without access to his essential medications that needed to be continuously administered, and failed to promptly take steps to ensure that Wiertella's medications were obtained, in violation of his constitutional rights. Accordingly, this Court should affirm the

12

District Court's denial of qualified immunity and summary judgment to Snow and Watson.

### A. **The District Court Correctly Denied Qualified Immunity to Snow and Watson.**

The District Court correctly ruled that a jury could reasonably conclude that Snow's and Watson's conduct constituted deliberate indifference to Wiertella's serious medical needs because they failed to promptly take steps to ensure that Wiertella's medications were obtained despite their knowledge of those needs.[2] Appellants attempt to deflect attention from this conclusion by raising the defense of qualified immunity. The law and the facts, however, refute Appellants' implausible defense.

The privilege of qualified immunity is "an *immunity from suit* rather than a mere defense to liability…" *Mitchelle v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added). For purposes of the qualified immunity analysis, the court considers the allegations in a light most favorable to the injured party. *Everson v.*

_____

[2] Snow may also be held liable as Watson's supervisor based on her implicit authorization and approval of Watson's unconstitutional conduct. *Griffith v. Franklin Cnty, Kentucky,* 975 F.3d 554, 579 (6th Cir. 2020). The District Court correctly determined that there were material issues of fact surrounding Snow's knowledge of Wiertella's medical needs precluding summary judgment, thus it declined to consider the viability of the supervisory liability aspect. (Opinion and Order, RE 77, Page ID 5985, fn 14). Therefore, for purposes of this brief, Appellee will focus on Snow's own conduct as a nurse and her deliberate indifference to Wiertella's needs.

*Leis*, 556 F. 3d 484, 494 (6th Cir. 2009). This means that the evidence is to be presumed to weigh in favor of Appellee.

The doctrine of qualified immunity shields officials from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis has two steps: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[3]

"There is no requirement of absolute factual identity before the law may be found to be 'clearly established.'" *Heflin v. Stewart Cty.*, 958 F.2d 709, 718 (6th Cir. 1992) (quoting *Bennis v. Gable,* 823 F.2d 723, 733 (3d Cir. 1987)). "The 'unlawfulness must be apparent . . . in the light of pre-existing law,' but '[w]e need not . . . find a case in which the very action in question has previously been held unlawful.'" *Greene v. Crawford Cty.*, 22 F.4th 593, 615 (6th Cir. 2022) (quoting *Burwell v. City of Lansing*, 7 F.4th 456, 476-77 (6th Cir. 2021)).

---

[3] For simplicity purposes, Appellee will address the prongs in reverse order just as Appellants did.

14

1. **An Inmate's Right to Be Free from Deliberate Indifference to Their Serious Medical Needs Was Clearly Established Long Before the *Richmond v. Huq* Decision.**

A litany of cases prior to *Richmond v. Huq* demonstrate that it was sufficiently clear to Snow and Watson that their deliberate indifference to Wiertella's serious medical needs violated Wiertella's clearly established constitutional rights. It has been well settled that "deliberate indifference to a prisoner's serious medical needs constituted cruel and unusual punishment under the Eighth Amendment and gave rise to a civil rights cause of action under 42 U.S.C. § 1983…" *Estelle v. Gamble*, 429 U.S. 97, 98, 97 S. Ct. 285, 288 (1976); *see also Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) ("where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.").

The Sixth Circuit has specifically held that an inmate's right to medical care that is not unreasonably delayed and an inmate's right to adherence to a prescribed plan of treatment are clearly established constitutional rights. *Boretti v. Wiscomb*, 930 F.2d 1150, 1151 (6th Cir. 1991) (finding that appellant sufficiently stated a claim of deliberate indifference to a serious medical need when appellee delayed medical care for five days); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844-45 (6th Cir. 2002) (finding that delayed action constituted a finding of deliberate indifference to a decedent's serious medical needs).

15

In *Parsons v. Caruso,* the Court held that a nurse could be found liable for deliberate indifference when she knew that an incoming inmate had not received his anti-seizure medication and she could have taken action to provide him with the medication, but she instead made "a conscious choice to let [plaintiff] linger yet longer without his anti-seizure medication." 491 F. App'x 597, 604-5 (6th Cir. 2012); *see Rhinehart v. Edelman*, No. 11-11254, 2016 U.S. Dist. LEXIS 173049, at *36-37 (E.D. Mich. Apr. 7, 2016) (finding that two doctors delayed medical care, which created a substantial risk of serious harm to the inmate); *Mize v. Sator*, No. 3:11-cv-685, 2016 U.S. Dist. LEXIS 163554, at *36 (M.D. Tenn. Nov. 28, 2016) (holding that a doctor's refusal to prescribe antiviral therapy constituted deliberate indifference to the patient's serious medical needs).

This clearly established right has been echoed by other courts throughout the United States. *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (reversing grant of summary judgment for defendants where prison staff deliberately refused to administer prescribed medication); *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001) (vacating dismissal of plaintiff's Eight Amendment claim where inmate informed prison officials that he needed his heart medications multiple times, and the prison officials failed to respond); *Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 904 (11th Cir. 2012) (concluding that a genuine issue of facts existed as to whether CMC was deliberately indifferent to an inmate's medical needs when CMC

failed to take adequate measures to ensure that the inmate was given his prescription medications); *Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016) (affirming denial of a motion to dismiss where prison staff failed to distribute plaintiff's prescription medication and a nurse delayed his receiving that medication); *Carter v. Broward Cnty. Sheriff Off.,* 710 F. App'x 387, 391-92 (11th Cir. 2017) (vacating dismissal of plaintiff's Eight Amendment claim where plaintiff pled that prison officials acted with deliberate indifference by failing to provide his blood-pressure medication as prescribed). As such, a consensus of cases supports the notion that Snow and Watson clearly understood that they had a duty to promptly respond to Wiertella's serious medical needs.

**2.** ***Richmond v. Huq* Clearly Established that When a Medical Employee at a Jail Becomes Aware that an Inmate Is on Medication for Serious Medical Conditions, that Employee Violates the Inmate's Constitutional Rights by Failing to Ensure that the Inmate's Medication Is Obtained.**

It was clearly established at the time of Wiertella's incarceration that failing to promptly take steps to ensure that Wiertella's medication was obtained violated Wiertella's constitutional rights. As to the specific facts of *Richmond*, this Court considered whether Richmond raised a dispute of material fact regarding an alleged Eighth Amendment violation by doctors, nurses, and psychiatric social workers at a jail for deliberate indifference. *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018). Richmond alleged that the medical staff at the jail was deliberately indifferent to her

17

medical needs because they failed to provide her with psychiatric treatment and medication for the first three weeks of her incarceration. *Id.* The Court reversed the district court's grant of qualified immunity and found that the district court improperly granted summary judgment to a jail physician (Dr. Huq), a psychiatric social worker (Myftari), and two nurses (Fowler and Hawk). *Id.*

Following *Richmond*, other courts have applied *Richmond* and reached the same conclusion. For example, the Court in *Murray v. Ohio* applied *Richmond* and concluded that the right to adherence to a prescribed plan of treatment was clearly established. *Murray v. Ohio*, 29 F.4th 779, 788-89 (6th Cir. 2022). Additionally, the court in *Strader v. Cumberland Cty.* determined that the Plaintiff's allegations were sufficient to claim that "Defendants 'consciously expos[ed] [him] to an excessive risk of serious harm' by ignoring these recommendations for further diagnostic scans and treatment with prescription medications, based on financial considerations." No. 2:19-cv-00045, 2020 U.S. Dist. LEXIS 9731, at *23 (M.D. Tenn. Jan. 21, 2020).

Moreover, the negative cases citing *Richmond* are not relevant to this case because they are not factually similar. *Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2020 U.S. Dist. LEXIS 30613, at *15 (E.D. Pa. Feb. 21, 2020) is not instructive, because the inmate was not deprived of his medication, rather, his physician refused to prescribe his preferred medication. *Wilson v. Williams*, 961 F.3d 829, 843 (6th Cir. 2020) is not instructive because the Federal Bureau of Prison did not fail to take

steps to address a known risk. *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 176556, at *65 (N.D. Ohio Sep. 28, 2022) is not instructive because it dealt with prescription narcotic pain medications and a substitute treatment plan that was developed upon the inmate's admission into jail). *Jones v. Cty. of Kent*, 601 F. Supp. 3d 221, 251 (W.D. Mich. 2022) is not applicable, because the nurses provided the prescribed medication. Thus, Appellants have not and cannot point to a single case that would warrant departing from *Richmond*.

### a. Snow and Watson Had a Fair and Clear Warning that They Were Required to Act to Ensure that Wiertella Obtained His Essential Medications.

There is no requirement the "case [be] directly on point," *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015). Nonetheless, *Richmond* is a "similar fact pattern that would have given fair and clear warning to [Snow and Watson] about what the law requires." *Arrington-Bey v. City of Bedford Heights,* 858 F .3d 988, 992-93 (6th Cir. 2017).

In *Richmond*, the court concluded that a reasonable jury could find that examining physician Dr. Huq was aware of the plaintiff's serious need for psychiatric medication, due to a records notation that the plaintiff had been on Prozac and Xanax prior to entering custody, and that Dr. Huq failed to take reasonable steps to ensure that the plaintiff received the medications. The court ruled that Dr. Huq

could have prescribed the medications herself or requested that a nurse check with the plaintiff's doctor or pharmacy to verify her prescriptions. *Richmond* at 941-42.

The court also concluded that the psychiatric social worker was aware of the risk that the plaintiff would experience harm and disregarded that risk by failing to ensure that the plaintiff received her psychiatric medication by placing the plaintiff in a program ensuring that she would not receive any medication for 17 days after her confinement began. *Id.* at 942-43. The court concluded that both nurses also were aware of the plaintiff's history of mental illness and disregarded the risk of the plaintiff suffering by denying psychiatric medications when they decided not to verify the plaintiff's prescriptions with an outside doctor or pharmacy. *Id.* at 946. The *Richmond* case provided Snow and Watson with a fair and clear warning about what the law required.

### (1) Watson's Conduct is Factually Similar to the Conduct of the Richmond Defendants.

Appellants' attempt to distinguish Watson's conduct from the conduct of the *Richmond* defendants is a red herring. As stated previously, a case does not have to involve the same set of facts as the case at bar for a right to be considered "clearly established." *Richmond* at 947. Notwithstanding this, Appellants argue that *Richmond* is distinguishable. First, Appellants argue that "Nurse Fowler saw Richmond after his arraignment, whereas Nurse Watson reviewed Wiertella's chart before he was arraigned. […] If a detainee posts bond, he is released and he has no

20

need for the jail to provide prescription medication." (Appellant's Brief, p. 14). But there is no evidence that Watson or Snow considered whether Wiertella would be released on bond when deciding whether to order medications. This information is not contained in the medical screening form and there is no evidence they obtained the information from any other source. Watson and Snow would not have known Wiertella's arraignment status and it did not impact any medical decision related to Wiertella. Moreover, they were constitutionally obligated to provide essential medications to inmates for serious medical conditions while the inmates were custody, regardless of when or if they would be released. Additionally, the *Richmond* court did not consider Richmond's arraignment when analyzing whether a constitional violation had occurred, thus this detail is irrelevant.

Second, Appellants argue that the practice of the Jail is to ask inmates to have their prescriptions brought into the jail by a friend or family member, and if no medication is received, either contact the inmate's pharmacy or physician or schedule the inmate for a sick call. However, there is no evidence that anyone at the Jail asked Wiertella to have his family and friends drop off his prescriptions, especially given the difficulty that this would entail since Wiertella was an out-of-state resident. Appellants further contend that Wiertella was scheduled for a sick call on December 10, 2018, which was "reasonable under the circumstances." However, the District Court properly scrutinized the fact that the sick call was scheduled for

eight days after Wiertella was booked without medication, as well as the fact that it was a nurse sick call, rather than with a physician with prescribing authority. In *Richmond*, the court found a constitutional violation when Myftari, the psychiatric social worker knew that an inmate may begin experiencing symptoms within a few days if her medications were stopped, yet he scheduled the plaintiff for an appointment with a psychiatrist several days after her confinement began, rather than immediately. *Richmond* at 943. Similarly, Watson testified that intervening earlier by medical staff is preferable, yet she scheduled a sick visit eight days after Wiertella was booked instead of immediately and she scheduled the sick visit with a nurse who lacked prescribing authority. (Watson, RE 59, Page ID 1203).

Third, Appellants argue that Nurse Hawk had "extensive interactions" with Richmond over eight days, whereas Watson was not involved with Wiertella after December 3, 2018. But Appellants' limited interaction with Wiertella makes the application of *Richmond* even more appropriate, not less. The District Court determined that Watson's limited involvement and her "failure to take any action regarding Mr. Wiertella's medications – without knowing that Mr. Wiertella would eventually see a medical professional – is more severe than the nurse's[,] doctor's, and social worker's unconstitutional conduct in *Richmond*." (Opinion and Order, RE 77, Page ID 5991). *See Richmond* at 939 (quoting *Alspaugh v. McConnell*, 643 F.3d

162, 169 (6th Cir. 2011)) ("treatment may be constitutionally impermissible when it is 'so woefully inadequate as to amount to no treatment at all.'").

Fourth, Appellants argue that in contrast to *Richmond*, there is no evidence to suggest that Watson or any defendant knew that Wiertella was at substantial risk of serious harm if he did not receive prescription hypertension medication by December 10, 2018. This is not true. As discussed throughout, (1) Watson understood from Wiertella's screening form that "he was on medications that needed to be continuously administered," (Watson, RE 59, Page ID 11261); (2) Watson admits that as of December 2, 2018, when she reviewed Wiertella's medical screening form, that she was aware that Wiertella took medications that she knew to be essential under the Jail's policies (Id., Page ID 1263-1264); (3) Watson was aware that Wiertella was booked without his medications (Id., Page ID 1269); (4) Watson was aware of Wiertella's explicit request for "diabetic and other meds" (Physician's Orders/Progress Notes, RE 70-14, Page ID 4905); (5) Watson acknowledged that the jail moved too slowly in getting medications (Watson, RE 59, Page ID 1286); (6) Watson testified that certain medications are considered "essential" under Jail policies, because serious medical harm or death can occur if they are not administered (Id., Page ID 1252); and (7) Watson testified that it is important to be compliant with medications for serious medical conditions, because if an individual is not compliant, a person can be seriously harmed or they can die. (Id.). Likewise,

23

Snow testified (1) that untreated high blood pressure can cause a substantial risk of harm to patients (Snow I, RE 63, Page ID 2730); and (2) that if an inmate identified high blood pressure medication as a need, "it would need to be addressed as soon as possible." (Id., Page ID 2764). Accordingly, the district court properly denied qualified immunity to Watson.

### (2) Snow's Conduct is Factually Similar to the Conduct of the Richmond Defendants.

Appellants' statements are unsupported by the record and fail to construe the evidence in a light most favorable to Appellee. Appellants claim that Snow did not review Wiertella's chart. (Appellants' Brief, p. 16). There is no evidence supporting this claim. Pursuant to the Jail's procedure, the nursing staff delivered medical screening forms to Snow to review. (Watson, RE 59, Page ID 1207; Longbons, RE 60, Page ID 2100). The District Court rightly concluded that a jury could reasonably infer that Wiertella's form was one of the forms placed on the shelf for Snow to review. Snow was aware that Wiertella was booked without access to his essential medications that needed to be continuously administered to treat his serious medical needs.

Appellants posit without evidence that Snow was on vacation when Wiertella died on December 9, 2018. (Appellants' Brief, p. 16). But Snow testified that she "believed" she was on vacation at the time of Wiertella's death but admitted that "[she] would have still been on-call 24/7." (Snow I, RE 63, Page ID 2767-2768).

Moreover, Watson reviewed and signed Wiertella's medical screening form on December 2, 2018, seven days prior to Snow's purported vacation. (Watson, RE 59 Page ID 1260, 1264; Physicians' Orders/Progress Notes, RE 70-14, Page ID 4900-4901). Thus, Snow was aware that Wiertella was booked without "essential medications" several days prior to her claimed vacation. (Id.). Additionally, as the Jail's Medical Coordinator, Snow was on-call when on vacation and she testified that she reviewed Jail reports and communicated with Jail staff while on-call, which further belies Appellants' claim that she did not review Wiertella's chart or medical file (Snow I, RE 63, Page ID 2767-2768).

The Sixth Circuit has held that Snow's knowledge is sufficient to establish awareness of Wiertella's medical needs. The *Richmond* court determined that Dr. Huq had sufficient awareness of Richmond's medications because she had access to his medical records and an opportunity to review them. This is true even though it was unclear from the record whether Dr. Huq reviewed all relevant details in the medical file. *Richmond* at 942. Similarly, Snow had access to and the opportunity to review Wiertella's medical records, and the District Court properly found that a reasonable jury could conclude that Snow was aware of Wiertella's need for essential medication and did nothing to secure the medications. Like Nurses Hawk and Fowler, there is no evidence that Snow attempted to verify Wiertella's prescriptions with an outside doctor or pharmacy, though Snow was aware as early

25

as December 2, 2018, that Wiertella had been booked without essential medications and she testified that the practice was for "nursing to follow up" on obtaining prescription information from the pharmacy (*Richmond* at 946; Physician's Orders/Progress Notes, RE 70-14, Page ID 4901; Snow I, RE 63, Page ID 2738). Therefore, the district court properly denied qualified immunity to Snow.

**3. The District Court Correctly Interpreted *Richmond v. Huq* as Providing Notice "that When a Medical Employee at a Jail Becomes Aware that an Inmate Is on Medication for a Serious Medical Condition, a Defendant Violates the Constition if She Fails to Promptly Take Steps to Ensure that the Inmate's Medication Is Obtained."**

Appellants mistakenly assert that *Richmond* did not hold that "when a medical employee at a jail becomes aware that an inmate is on medication for a serious medical condition, a defendant violates the constitution if she fails to promptly take steps to ensure that the inmate's medication is obtained." This assertion is baseless, as that is *exactly* what the *Richmond* court held. The court denied qualified immunity to Dr. Huq because a reasonable jury could find that she was aware of Richmond's serious need for medication, yet failed to take reasonable steps to ensure that Richmond received it. *Richmond* at 942. The court also denied qualified immunity to psychiatric social worker Myftari, holding that Myftari knew that Richmond had serious medical needs and that there was a risk that she would experience symptoms before she received any medication, yet he disregarded that risk. *Id.* at 943. Regarding Nurses Fowler and Hawk, the court denied qualified immunity to both

26

nurses, holding that they were aware of Richmond's serious psychiatric needs and disregarded the risk that she may needlessly suffer without her psychiatric medication. *Id.* at 946-47. The District Court correctly understood and applied *Richmond* to the facts of this case and determined that Snow's and Watson's conduct violated Wiertella's rights.

Appellants incorrectly maintain that the District Court's interpretation of *Richmond* is so broad that it effectively precludes negligent defendants from establishing qualified immunity in prescription cases. However, the *Richmond* court made clear that something more than negligent conduct is required to establish a finding of deliberate indifference. *Richmond v. Huq* at 948 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994)) ("deliberate indifference can be shown by proof that the city or county 'knows that inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it.'"). The present case is not one of negligence. The District Court considered whether Snow and Watson's conduct was merely negligent, and it rejected this conclusion. This is supported by the record, which plainly demonstrates that Snow and Watson were aware that Wiertella's medications were "essential," yet they did nothing to secure his medications. The District Court correctly applied the holding in *Richmond* to the present case.

### 4. The District Court Properly Found that Snow and Watson Violated Wiertella's Constitutional Rights.

The District Court evaluated Wiertella's deliberate indifference claim under the *Farmer* test. *Farmer v. Brennan,* 511 U.S. 825 (1994). According to *Farmer*, an inmate must establish (1) an objective component – an objectively serious medical need[4]; and (2) a subjective component – that an officer "official kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Id.* at 834, 837. "Failure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Richmond* at 939.

As an initial matter, it may not be necessary to discuss the subjective component of Wiertella's deliberate indifference claim. *Kingsley v. Hendrickson*, 576 U.S. 389, 390, 135 S. Ct. 2466, 2468 (2015) held that a pretrial detainee's Fourteenth Amendment excessive force claim need only meet the objective component, thus is seemingly abrogated the subjective component of a Fourteenth Amendment deliberate indifference claim. *Richmond* "recognize[d] that this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [inmates] need even show that the individual defendant-officials were subjectively aware of [an inmate's] serious medical conditions and nonetheless wantonly disregarded them." *Id.* at 938, n.3. Although Wiertella may

---

[4] There is no dispute that Wiertella has established the objective component and Appellants do not dispute that Wiertella had an objectively serious medical need, therefore the objective component prong will not be addressed herein. (Appellant's Brief, p. 21).

not have been required to establish the subjective component, the District Court properly concluded that Wiertella sufficiently made such a showing.

### a. Watson Knew of and Disregarded an Excessive Risk to Wiertella's Health and Safety.

As discussed in Section A1a(1) *supra*, Watson knew that Wiertella's medications needed to be continuously administered, that his medications were essential under the Jail's policies, she was aware that Wiertella was booked without his medications, and she was aware of his explicit request for "diabetic and other meds." (Watson, RE 59, Page ID 1261, 1263, 1269; Physician's Orders/Progress Notes, RE 70-14, Page ID 4905). Additionally, Watson understood that the Wiertella's medications were considered "essential" under the Jail's policies, because serious medical harm or death could occur if they were not administered. (Watson, RE 59, Page ID 1252). Likewise, Watson understood that it was important to be compliant with medications because she knew that there was a risk that an individual could be seriously harmed or that they could die if they were not compliant. (Id.). Yet, she disregarded the excessive risk to Wiertella's health and safety by failing to promptly take steps to ensure that Wiertella's medications were obtained.

Appellants futilely argue that Wiertella was asymptomatic and that he did not make any medical complaints prior to his death. The *Richmond* court confirmed that this type of argument is unavailing. *See Richmond* at 943 ("To wait until an inmate

29

with a documented history of mental illness has a psychiatric episode so severe that it requires inpatient treatment before providing her with any psychiatric medication will inevitably result in unnecessary suffering by the inmate. This is the very type suffering the Eighth Amendment aims to prevent."). Moreover, contrary to Appellants' contentions, Wiertella made numerous medical complaints, as evidenced by his responses to the medical screening form, as well as the three kites he submitted. Accordingly, Appellee satisfied the subjective component as it relates to Watson's conduct.

> **b. Snow Knew of and Disregarded an Excessive Risk to Wiertella's Health and Safety.**

As discussed in Section A1a(2) *supra*, Snow knew of and disregarded an excessive risk to Wiertella's health and safety. Snow had access to and the opportunity to review Wiertella's medical records, thus the District Court properly concluded that Snow was aware of Wiertella's need for essential medications and did nothing to secure those medications.

## **CONCLUSION**

The district court properly denied qualified immunity to Snow and Watson. For the reasons discussed above, Appellee respectfully requests that this Court affirm the District Court's denial of summary judgment to Snow and Waston.

Respectfully submitted,

*/s/ Daniel P. Petrov*

30

DANIEL P. PETROV (0074151)
dpetrov@tpgfirm.com
SARAH E. WYSS (0100278)
swyss@tpgfirm.com
THORMAN PETROV GROUP CO., LPA
20046 Walker Road
Shaker Heights, OH 44122
Tel. (216) 621-3500
Fax (216) 621-3422

*Attorneys for Dennis Wiertella*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,175 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Respectfully submitted,

*/s/ Daniel P. Petrov*
DANIEL P. PETROV (0074151)
dpetrov@tpgfirm.com
SARAH E. WYSS (0100278)
swyss@tpgfirm.com

Thorman Petrov Group Co., LPA
20046 Walker Road
Shaker Heights, OH 44122
Tel. (216) 621-3500
Fax (216) 621-3422

Attorneys for Plaintiff-Appellee

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on August 14, 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> */s/ Daniel P. Petrov* _____
> *Attorney for Dennis Wiertella*

**ADDENDUM**

| RECORD | TITLE | PAGE ID |
|---|---|---|
| 48 | Motion for Summary Judgment of Dr. Raz ("Raz MSJ") | #331-1025 |
| 57 | Motion for Summary Judgment of Remaining Lake County Defendants (Ds' MSJ") | #1065-1139 |
| 59 | Deposition of Nurse Christina Watson ("Watson") | #1142-#2042 |
| 60 | Deposition of Lt. Benhamin Longbons ("Longbons") | #2043-2344 |
| 63 | Deposition of Nurse Diane Snow ("Snow I") | #2680-2816 |
| 64 | Deposition of Nurse Diane Snow ("Snow II") | #2817-2874 |
| 65 | Deposition of Jonathan Arden, M.D. ("Arden") | #2875-2988 |
| 70-5 | Deposition of Karim Razmjouei ("Raz") | #3500-3707 |
| 70-12 | Captain Cynthia Brookes Deposition Exhibit 5, Lake County Sheriff's Office, Lake County Adult Detention Facility – Policies & Procedures Manual ("Manual") | #4199-4789 |
| 70-14 | Sgt. John Kelly Deposition Exhibit 7, Physician's Orders/Progress Notes ("Physician's Orders/Progress Notes") | #4899-4907 |
| 71 | Plaintiff's Consolidated Opposition To | #4925-5885 |

34

| | Defendants' Motion for Summary Judgment ("BIO") | |
|---|---|---|
| 77 | Memorandum Opinion and Order ("Opinion and Order") | #5959-6006 |